378 A.2d 314

# In re Nomination Petition of Penn B. GLAZIER as a Republican Candidate for Judge of the Court of Common Pleas for Lancaster County, Pennsylvania (2nd Judicial District).

## Appeal of Penn B. GLAZIER.

Supreme Court of Pennsylvania.

Argued April 11, 1975.

Decided Oct. 7, 1977.

252

Blank, Rome, Klaus & Comisky, Goncer M. Krestal, Philadelphia, for appellant.

Shirk, Reist & Buckwalter, Thomas L. Goodman, Lancaster, for appellees M. McCorkel and M. Charlene Musser.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## ORDER

PER CURIAM.

On April 14, 1975, an Order was entered by this Court, affirming the Order of the Commonwealth Court. The majority of this Court adopts the reasons set forth by President Judge Bowman of the Commonwealth Court in the Memorandum Opinion filed by him on March 25, 1975. The contents of that Memorandum Opinion follow:

## MEMORANDUM OPINION

BOWMAN, President Judge.

Ten sheets containing the signatures of 239 ostensible qualified Republican electors constitute the nomination petition of Penn B. Glazier for the office of Judge of the Second Judicial District (Lancaster County) in the forthcoming Republican Primary.[1] Two qualified Republican electors timely filed objections to said petition, asserting a variety of reasons for setting aside the petition as lacking the requisite minimum 200 valid signatures and because of alleged irregularities concerning the circulation of eight of the ten sheets by persons other than the individual who certified to have been the circulator and made the requisite affidavit to that effect.

At hearing, a number of objections as to the sufficiency of certain signatures were stipulated by counsel to no longer be in issue for that reason, and as to several other objections of this nature, the petitioners offered no supporting proof. As to those signatures attacked as being of persons not registered to vote, the record clearly discloses that thirteen (13) were not so registered[2] and one (1) signature identified as "Mrs. Morrow" (Sheet 6, line 14), without further proof, must likewise be stricken. Additionally, on Sheet 1, lines 18–32 inclusive, it is manifest that the residences, occupations and date of signing were not recorded by the signators but by another unknown party. While such deficiencies are possibly amendable, no evidence was offered to rehabilitate these deficiencies nor motion to allow amendment thereof was made at hearing. Hence, these fifteen (15) signatures must be stricken, making a total of twenty-nine (29) disqualified signatures for the reasons noted.

The critical issue, however, turns on the legality of all but two of the ten sheets comprising the nomination petition, which eight sheets bear the signature and affidavit of C. Byron Kohr as the circulator of said sheets. With the exception of the signatures appearing upon Sheet 4, lines

1. Respondent has also filed a nomination petition for the same office in the Democratic Primary.

2. Sheet 1, lines 11, 13, 31, 33; Sheet 4, lines 25, 35, 39; Sheet 5, line 22; Sheet 6, line 5; Sheet 9, lines, 4, 5, 12; Sheet 10, line 10.

16–47 inclusive (three of whom are otherwise disqualified as not registered), the record is clear and undisputed that Mr. Kohr did not obtain any of the signatures on any of the disputed sheets; did not and does not know, with a few minor exceptions, the signators, their place of residence, occupation or the date they signed the petition; did not deliver the sheets nor receive the sheets from the person who actually circulated them in several cases; and for the most part, had only limited knowledge or no knowledge of the names of, or direct association with, the actual circulators. Of the eight sheets, Sheets 2, 4 and 9, containing the vast majority of the total signatures on the nomination petition, were circulated not by one person but by three different persons who received the sheets from or delivered them to a person other than Mr. Kohr.

By stipulation or by testimony, we know the identity of the actual circulator of the contested sheets or portions of sheets (except Sheet 9, lines 12–20 inclusive), and with one exception (Mr. Vecera, Sheet 5, lines 22–27 inclusive), each actual circulator testified that the signatures he or she obtained were known, as was their residences, occupations and date of signing as set forth on the several sheets. No motion to amend the defects alleged to exist in this area was made at hearing.

Section 909 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. § 2869 (Supp. 1974–1975), requires each sheet of a nomination petition to have appended thereto the affidavit of the circulator of each such sheet, setting forth, among other things, that to his knowledge the signers thereto signed with full knowledge of the contents of the petition; that their residences are correctly stated; that they reside in the county named in the affidavit; that each signed on the date said opposite his name; and "that, to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party."

There can be no question that there has been a gross perversion of this statutory mandate with respect to eight of

the ten sheets comprising respondent's nomination petition, a perversion aggravated by the purported circulator's affidavit being taken in absentia.

Relying upon *Martin Nomination Petition*, 435 Pa. 446, 257 A.2d 247 (1969), respondent asserts that he should be allowed to rehabilitate his nomination petition through amendment by having the actual circulators now make the requisite affidavits in light of the record which by stipulation discloses their identity and by the testimony of all but one of them discloses sufficient knowledge on their part to properly make such affidavits. Alternately, if we understand respondent correctly, he contends the record before us, without need for an amendment procedure, is in itself sufficient to cure said defects.

In our view, *Martin* must be strictly limited to "circumstances of [that] case" and should not be extended to this one where respondent's right to seek the office of judge is not lost as he remains a candidate for such office in the forthcoming Democratic Primary. Nor do we believe the capricious disregard of the requirements of the Pennsylvania Election Code manifested by this record may be properly characterized as mere technical noncompliance.

If this record would permit amendment or is sufficient in itself to validate the unlawful circulator's affidavits in question, we would, in effect, be judicially nullifying section 909 of the Code. In the name of open elections and justice, we are asked to ignore the law or emasculate it. We will not do so but find the disputed sheets to be invalid, thus invalidating the signatures contained thereon and reducing the number of valid signatures to below the minimum number required.

JONES, former C. J., did not participate in the consideration or decision of this case.

ROBERTS, J., concurs in the result and does not adopt the opinion of the Commonwealth Court.

EAGEN, J. (now Chief Justice) and MANDERINO, J., dissent.