516 A.2d 1293

In Re: Nomination Petition of Justin Johnson.

Heard March 29, 1985, by Judge DOYLE.

*C. Kent Price,* with him, *Lee C. Swartz, Hepford, Swartz, Menaker & Morgan,* and *Thomas B. Kenworthy, Morgan, Lewis & Bockius,* for petitioner.

*Mark D. Schwartz, Mark D. Schwartz, P.C.,* for respondent.

OPINION AND ORDER:

This case comes before us in our original jurisdiction pursuant to Section 764(2) of the Judicial Code, 42 Pa. C. S. §764(2) and Section 977 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2937 (Election Code).

Petitioners/Objectors[1] have filed a Petition to Set Aside the Nomination Petition of Justin Johnson (Respondent). Petitioners allege that Respondent has "purportedly" filed a Nomination Petition for the 1985 Primary Election for the office of Judge of the Superior Court of Pennsylvania on the Republican Party ballot, but that Respondent's petition is infirm in that it fails to comply with the requirements of the Election Code.

On March 12, 1985 Respondent filed his Nomination Petition with the Secretary of the Commonwealth pursuant to Section 953 of the Election Code, 25 P.S. §2913. On March 19, 1985 Petitioners filed their Petition to Set Aside the Nomination Petition pursuant to Section 977 of the Election Code.[2] This Court, by order dated March 20, 1985, directed that a hearing on the merits be scheduled on March 29, 1985. On March 22, 1985 Respondents filed Preliminary Objections to the

---

[1] Petitioners in this action allege that they are the Republican State Committee by its trustees: Robert B. Asher, a qualified elector of Montgomery County and a registered Republican; and David M. Sanko, a qualified elector of Dauphin County and a registered Republican.

[2] The Petition to Set Aside alleges that the Nomination Petition contains signatures of individuals who were not, at the time of signing, registered and enrolled members of the Republican Party; that numerous signatures are illegible making identification impossible; that some persons signed more than once; that certain signatures were forged; and that one entire page of the Nomination Petition is invalid on its face because the party of the signers is designated as being the Democratic Party.

Petition to Set Aside.[3] Respondent maintains that the Petition to Set Aside, when filed on March 19, 1985, did not contain a verification signed by any of the Petitioners. That is correct. A verification *was* filed with this Court, however, the next day, March 20, 1985, said verification bearing a signature reading "David M. Sanko."[4] Respondent argues that the failure to submit verification within the time the Petition was required by statute to be filed, *i.e.*, March 19, 1985, is violative of Section 977 of the Election Code and therefore the Petition to Set Aside is fatally defective. Section 977 provides:

> All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the

---

[3] Respondents also filed a Petition to Show Cause Why the Petition to Set Aside Should Not Be Dismissed. That Petition contains objections identical to those in the Preliminary Objections to the Petition to Set Aside the Nomination Petition and if considered would be disposed of in the identical manner as are the preliminary objections.

[4] No facts were adduced of record as to why the affidavit was missing and no argument was made by counsel for the Objectors that the omission was due to fraud or official administrative error.

time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside.

It is apparent that Section 977 is silent on the matter of verification and simply states that the Objectors must file a petition. Thus, the questions to be decided are (1) must the Objectors' petition contain a verification and (2) if it must contain a verification, can the omission of such verification be cured by submitting a verification after the time period for filing the Objectors' petition has run.

We are of the view that a verification *is* required. Pa. R.A.P. 106, which relates to this Court's original jurisdiction provides:

Unless otherwise prescribed by these rules the practice and procedure in matters brought before an appellate court within its original jurisdiction shall be in accordance with the appropriate general rules applicable to practice and procedure in the courts of common pleas, so far as they may be applied.

Reference to the pertinent rule of civil procedure, Pa. R.C.P. No. 1024(a), reveals the following language:

Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and *shall be verified*. (Emphasis added.)

Allegations of fact have been made in the instant case. The rule relating to verification is thus applicable. The purpose of verification is to prevent spurious suits. *Township of Chester v. Stapleton*, 72 Pa. Commonwealth Ct. 141, 456 A.2d 673 (1982). This policy is not to be lightly disregarded, especially where political careers hang in the balance. Accordingly, it is our view that verification is necessary.

As to the question of whether a late verification can cure the defect, we are of the view that it cannot. Case law has held that the failure to attach an affidavit to a *nomination petition* is a *fatal* defect. *See Kloibner Nomination Petition,* 26 Pa. Commonwealth Ct. 50, 362 A.2d 484 (1976). This is so despite the Pennsylvania Supreme Court's instruction that the Election Code is to be liberally construed so as to preserve as much as possible an individual's right to run for office or a voter's right to elect the candidate of his or her choice. *Ross Nomination Petition,* 411 Pa. 45, 190 A.2d 719 (1963). Recognizing that the failure to attach verification invalidates a nomination petition despite the fact that the Election Code is to be given a liberal construction to preserve such petitions, we now hold that a petition to set aside a nomination petition is required to have an affidavit attached and its absence is a fatal defect. This follows logically because in order for the Election Code to be construed liberally in favor of a candidate, it must, of necessity, be construed strictly against an objector. Therefore, if the absence of verification from a *nomination petition* is fatal, the absence of verification from an *objector's petition* must, *a fortiori,* be fatal.

The defect here is one which goes to subject matter jurisdiction. Although counsel for the Objectors has cited case law which Objectors maintain holds to the contrary, those appellate court cases cited involved fact patterns where a verification was submitted in a *timely* manner, but lacking in technical compliance.[5] Here,

---

[5] Counsel has cited *Rupel v. Bluestein,* 280 Pa. Superior Ct. 65, 421 A.2d 406 (1980) (counsel verified complaint without explaining why client was unable to do so and without stating the source of counsel's information as to matters not stated upon counsel's knowledge); *Monroe Contract Corporation v. Harrison Square, Inc.,* 266 Pa. Superior Ct. 549, 405 A.2d 954 (1979) (counsel verified petition to strike or open judgment and verification did

there was no timely verification at all; hence, not only was there nothing to amend, but there was nothing to confer jurisdiction since the pleading (here the petition) containing an averment of fact *"shall* be verified." While we agree that holding counsel to a technically accurate verification might be exalting form over substance, we cannot agree that permitting a pleading which lacks *any verification whatsoever* to toll the statute of limitations is a hyper-technical application of the law. We thus believe this decision adheres to the spirit of *Rupel v. Bluestein,* 280 Pa. Superior Ct. 65, 421 A.2d 406 (1980), which expressed concern over rigid application of procedural rules being used to defeat substantive rights, and to the Pennsylvania Supreme Court dictate that the Election Code be construed liberally in favor of a candidate. *Ross.*

Objectors' argument that *Rupel* stands for the legal proposition that the total lack of verification should be dealt with in the same manner as a verification that is not complete or is technically defective is not persuasive. In *Rupel,* although the Court did state that "[t]he defects [in verification] were not jurisdictional", *Id.* at 74, 421 A.2d at 410, the case did not involve a situation where the statute of limitations for commencing an action had run. *Rupel* is thus clearly distinguishable from the instant case. Moreover, even though the time limi-

---

not allege that appellant was without sufficient information to verify); *Lewis v. Erie Insurance Exchange,* 281 Pa. Superior Ct. 193, 421 A.2d 1214 (1980) (counsel verified petition but petition did not set forth with sufficient specificity reasons why verification was not made by party); *General Mills, Inc. v. Snavely,* 203 Pa. Superior Ct. 162, 199 A.2d 540 (1964) (affidavit of defense did not require special verification). None of these cases concerns a statutory time restriction. Additionally, the lower court case cited by counsel in his brief, *Noll Appeal,* 27 D. & C. 2d 780 (1962), concerned a *defective* affidavit, not an *absent* affidavit.

tation was not an issue in *Rupel,* the Court there held that the lack of proper verification *was sufficient cause* to dissolve a preliminary injunction. The Court went on to state:

> This insistence upon *at least* a properly verified complaint may seen 'technical,' but no apology need be made for that. The rules are clear, and their requirements easily satisfied. Appellee's violation of the rules—more accurately, her counsel's violation—is equally clear. Given that appellee sought the most extraordinary relief that a court can grant, no reason appears why she should not be required to abide by the rules.

*Id.* at 81-82, 421 A.2d at 414.

Based on the foregoing, we sustain the Respondent's Preliminary Objection that the verification was not attached to the Petition to Set Aside and dismiss with prejudice the Petition to Set Aside.[6]

### ORDER

AND NOW, this 2nd day of April, 1985, Respondent's Preliminary Objection relating to the lack of verification is sustained and the Petition to Set Aside the Nomination Petition of Justin Johnson is hereby dismissed with prejudice.

### SUPPLEMENTAL ORDER

AND NOW, this 12th day of April, 1985, costs are assessed against the Petitioner.

---

MEMORANDUM OPINION AND ORDER BY JUDGE DOYLE:

This case, which is in our original jurisdiction, is before us following a reversal and remand by the Penn-

---

[6] Because of our disposition of the preliminary objection relating to verification we cannot rule on the other preliminary objections.

sylvania Supreme Court. Petitioners/Objectors filed a Petition to set Aside the Nomination Petition of Justin Johnson for the office of Judge of the Superior Court on the Republican Party ballot. Justin Johnson (Respondent) filed various preliminary objections including an objection that the Petition to Set Aside the Nomination Petition was fatally defective because no verification was filed within the prescribed statutory period. We opined that the total absence of verification was a fatal defect which deprived us of subject matter jurisdiction; accordingly, we dismissed the case with prejudice. The Supreme Court, in a per curiam order, *In Re: Nomination Petition of Justin Johnson,* (No. 21 W.D. 1985, filed April 22, 1985), reversed and remanded for consideration of the remaining issues. Accordingly, we now proceed to rule on the remaining preliminary objections.

Respondent objects to the Petition to Set Aside the Nomination Petition because it refers to the Republican State Committee for the Republican Party as being organized pursuant to Section 803 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2833 (Election Code). The Section of the Election Code referred to was, as alleged in the preliminary objections, expressly repealed by Section 3 of the Act of December 22, 1971, P.L. 614. But, even though Section 803 was, in fact, repealed, it is well known by common experience that the Republican Party was in existence prior to 1971. We therefore take judicial notice of this fact. This preliminary objection is, accordingly, overruled.

Respondent next maintains that the Petition to Set Aside the Nomination Petition is violative of Pa. R.C.P. No. 1018.1 and Pa. R.A.P. 3709 in that it lacks a notice to defend. It is our view, however, that the absence of this notice is not fatal and, hence, does not require

striking the petition. In a case where notice to defend is lacking, a respondent is adequately protected by being relieved from the duty to answer. *Hercoform Marketing, Inc. v. Brown,* 75 D. & C. 2d 394 (1975). In fact, Respondent did file an Answer to the Petition to Set Aside the Nomination Petition on March 28, 1985. This preliminary objection is therefore also overruled.

Next, Respondent maintains that pursuant to Section 977 of the Election Code the last day upon which a hearing could be scheduled in this matter was on March 22, 1985, that is, ten days after the last day to file nominating petitions, viz., March 12, 1985. Section 977, 25 P.S. §2937, provides:

> All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside.

The nomination petition in the instant case was filed with the Secretary on March 12, 1985 and the Petition to Set Aside the Nomination Petition was presented to this Court on March 19, 1985. Therefore, under a strict reading of Section 977, the ten-day period for the hear-

ing would elapse on March 22, 1985. This strict reading of the statute would require scheduling the hearing, serving the Respondent, and holding the hearing all within three days. This would be an almost impossible task. Not fortuitously, the ten-day limit has been construed by the Pennsylvania Supreme Court as directory rather than mandatory. *See Moore Nomination Petition,* 447 Pa. 526, 291 A.2d 531 (1972); *American Labor Party Case,* 352 Pa. 576, 44 A.2d 48 (1945); *Socialist Labor Case,* 332 Pa. 78, 1 A.2d 831 (1938). Therefore, a March 29, 1985 hearing does not violate Section 977 and this preliminary objection is accordingly overruled.

Respondent next complains that Petitioners have included a "catch all clause" in their Petition to Set Aside the Nomination Petition and alleges that such clause is violative of Pa. R.C.P. No. 1019(a) and (f) and Sections 976 and 977 of the Election Code, 25 P.S. §§2936, 2937. The offending clause reads, "[p]etitioners further reserve the right to raise, at the time of hearing, any and all additional defects in the Nomination Petition which are in the nature of those set forth hereinbefore and which are not in conformity with the requirements of the Election Code." We agree that this clause is violative of Section 977 of the Election Code, which Section requires that objectors specifically set forth their objections and, accordingly, we sustain this preliminary objection and strike the offending clause. This would not, however, foreclose to Petitioners the right to petition to amend their petition to include after-discovered factual allegations.

Having disposed of the preliminary objections, we now reach the merits. Petitioners complain, in essence, that Respondent has failed to comply with Section 912 of the Election Code. Section 912 requires a candidate such as Respondent to obtain on his nominating petitions signatures of "at least one hundred registered

and enrolled members of the proper party in each of at least five counties of the State." 25 P.S. §2872. Petitioners allege that Respondent obtained signatures in ten counties as follows:[1]

| | |
|---|---|
| Dauphin County | 361 |
| Allegheny County | 247 |
| Westmoreland County | 120 |
| Blair County | 110 |
| Washington County | 108 |
| Erie County | 46 |
| Cumberland County | 45 |
| Lancaster County | 29 |
| Bedford County | 10 |
| Clarion County | 5 |

As is readily evident there are only five counties in which Respondent allegedly had over 100 signatures. Accordingly, if in any one of those five counties enough names are stricken to cause the total to fall below one hundred, Respondent will not meet the criteria of Section 912 of the Election Code.

The petitions from Blair County contain 110 signatures (N.T. 4, 5). The director for voter registration in Blair County credibly testified that the voter registration records for Blair County are under her care, custody and control and that these records are prepared under her supervision (N.T. 25). She further testified that the persons who do not vote for two years are "purged" from the registration files (N.T. 11). Prior to being purged, however, voters are advised by mail that their registration will be cancelled if they do not return, within thirty days, a "purge card", which card is sent to them advising them of their impending cancellation

---

[1] By stipulation of counsel (N.T. 4-5) all allegations of the Petitioners in this regard, with the exception of Allegheny County, are admittedly correct.

(N.T. 12, 15-17, 19-20). The witness further explained that when these purge cards are not returned, this information is entered into a computer which generates a cancellation report (N.T. 22-23). The cancellation report is then checked against the voter registration cards (N.T. 27).[2]

This witness explained that her personal examination of the registration files revealed that Pauline Balestino and Richard Balestino had both been purged because of failure to vote within two years and failure to return the purge cards (N.T. 21-22). She further stated that the purging occurred prior to the time each of these two persons signed Respondent's nominating petition (N.T. 12-13). Accordingly, we find that when these two individuals signed the nominating petition they were not registered voters and therefore their names must be stricken.

The witness further testified that her personal examination of the registration files revealed that three of the persons whose names appeared on a nominating petition (Margaret Keagy, Steven Betz and Maureen Conrad) (N.T. 10-11, 28-29) were not registered voters. Therefore their names must be stricken.

Finally, the witness testified that her personal examination of the registration files revealed that six of the signatories to the nominating petition (Timothy Reilly, Gordon Williams, Betty Williams, Timothy Welsh, Lillian Welsh and David J. Mason) (N.T. 27-31) were registered Democrats. Because the nomination petition is one for the office of Superior Court Judge on the *Republican* ballot, these names are not of the "proper party" and must be stricken.

---

[2] Respondent's request for reconsideration of the Court's ruling on Respondent's objection to the testimony of Jacqueline Yingling, on the basis of hearsay, is denied. (N.T. 14, 27, 34, 35)

When the above eleven names are subtracted from the 110 signatures appearing on the Blair County nomination petitions, only ninety-nine names remain. Accordingly, Respondent does not have 100 names from at least five counties and thus his nomination petition does not meet the strictures of the Election Code. We therefore grant the Petition to Set Aside the Nomination Petition of Justin Johnson for Judge of the Superior Court on the Republican ballot.

## ORDER

AND NOW, this 25th day of April, 1985, the Petition to Set Aside the Nomination Petition of Justin Johnson for the office of Judge of the Superior Court of Pennsylvania on the Republican ballot is hereby granted and the Secretary of the Commonwealth is directed to refrain from certifying to the proper officials the name of Justin Johnson as a candidate for the office of Judge of the Superior Court on the *Republican* ballot at the primary election to be held on May 21, 1985.