In Re NOMINATION PETITION OF Victor R. DELLE DONNE as candidate for the office of Judge of the Commonwealth Court of Pennsylvania.

Objection of The Honorable Christine M. Tartaglione.

Commonwealth Court of Pennsylvania.

Heard March 26, 2001.
Decided April 6, 2001.
Publication Ordered June 7, 2001.

Ralph J. Teti and Linda M. Martin, Philadelphia, for petitioner.

George W. Jacoby, Pittsburgh and Karyn Rok, Carnegie, for respondent.

DOYLE, President Judge.

Before us for consideration is the petition of State Senator Christine M. Tartaglione (Tartaglione), seeking an order to set aside the nomination petition of Victor R. Delle Donne (Candidate), a candidate in the Democratic Party primary election for the office of Judge of the Commonwealth Court of Pennsylvania. In conjunction with this nomination petition challenge, we also have before us numerous other documents that constitute the pleadings in this election contest.[1]

Hearings were held in Harrisburg on March 26 and 27, 2001, and it was agreed that the Candidate's nomination petition was timely filed with the Secretary of the Commonwealth on March 6, 2001, and that Tartaglione timely filed her Petition to Set Aside Nomination Petition (Petition) on March 13, 2001. On March 14, 2001, Tartaglione filed a Supplemental Petition to Set Aside Nomination Petition (Supplemental Petition).

The primary election will be conducted on May 15, 2001. Section 912.1(10) of the Pennsylvania Election Code (Election Code)[2] requires a nomination petition for the office of Judge of the Commonwealth Court to have a minimum of one thousand signatures of registered and enrolled members of the proper party, in this case the Democratic Party, with at least one hundred signatures from each of five counties. 25 P.S. § 2872.1(10). As originally filed, the Court notes that the Candidate's nomination petition contained 1,786 signatures, and seven counties met the one hundred-signature minimum; the Department of State, Bureau of Elections of the Commonwealth of Pennsylvania, struck only five signatures, thereby leaving 1,781 presumably valid signatures as the starting point for our analysis. The seven counties from which a nominating petition, containing more than one hundred signatures were filed, are as follows:

| County | No. of Signatures |
| --- | --- |
| Allegheny | 829 |
| Beaver | 212 |
| Cambria | 129 |
| Centre | 161 |
| Erie | 110 |
| Fayette | 124 |
| Lycoming | 109 |

---

1. The pleadings and motions consist of: Tartaglione's Petition to Set Aside Nomination Petition; Tartaglione's Supplemental Petition to Set Aside Nomination Petition; Candidate's Answer to both the Petition to Set Aside Nomination Petition and the Supplemental Petition to Set Aside Nomination Petition; Candidate's Motion to Dismiss the Petition to Set Aside Nomination Petition; Candidate's Motion to Dismiss the Supplemental Petition to Set Aside Nomination Petition; Tartaglione's Answer to both of Candidate's motions to dismiss; Candidate's Motion to Amend Nomination Petition; and Tartaglione's Application to Amend the Petition to Set Aside Nomination Petition.

2. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2872.1(10), added by Section 2 of the Act of December 12, 1984, P.L. 968.

Initially, the Candidate filed a motion to dismiss Tartaglione's Supplemental Petition because it was filed with this Court after the statutory deadline of March 13, 2001, as required by Section 977 of the Election Code, 25 P.S. § 2937, and because it had not been served on the Secretary of the Commonwealth. Section 977 of the Election Code provides in pertinent part:

> All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed.

25 P.S. § 2937. The last day to file a nomination petition this year was March 6, 2001. Therefore, under the Election Code, the last day to file an objection to a nomination petition was March 13, 2001. We therefore find that, because Tartaglione's Supplemental Petition was filed on March 14, 2001, it was one day late and, therefore, untimely; accordingly, it will be dismissed.[3] While Tartaglione's initial petition contained language reserving the right to "amend this petition as to additional objection(s) as are appropriate **at the time of the hearing** in this matter"

(Petition, para. 7, page 6), the filing of a supplemental petition containing challenges to *additional* signatures is not permitted under the Election Code and is not, therefore, a right which may be preserved by a reservation in the original petition to set aside.

In *In re Wagner,* 510 Pa. 584, 511 A.2d 754 (1986), the Supreme Court affirmed a decision of this Court holding that a challenger may not file a petition challenging a candidate's nomination petition and then file a second or supplemental challenge if that second challenge is filed beyond the seven day period permitted for the filing of challenges under Section 977 of the Election Code. The *Wagner* Court distinguished its earlier decision in *Appeal of Beynon,* 370 Pa. 532, 88 A.2d 789 (1952), upon which Tartaglione relies, where the Court permitted a reopening of the proceedings. In *Beynon,* however, the objector was not raising **additional challenges** to the petition; rather he was merely supporting his original challenges with additional evidence. The *Wagner* Court declined to extend *Beynon* to permit out-of-time supplemental petitions to set aside because the candidate would have been required to investigate additional signatures, and raise additional defenses, thus rendering the time limitations, and protections, offered by Section 977 a nullity. The Supreme Court addressed this issue again in *In re Bishop,* 525 Pa. 199, 579 A.2d 860 (1990), when it said:

---

3. Tartaglione argues that the Election Code does not require that a supplemental petition be served on the Secretary of the Commonwealth. We disagree. In *In re Nominating Petition of Lee,* 525 Pa. 155, 578 A.2d 1277 (1990), the Supreme Court held that failure to serve a copy of a petition to set aside a nomination on the Secretary of the Commonwealth rendered that petition invalid. That requirement is of no less importance when that petition is a supplemental petition to set aside that raises *additional* challenges to a

candidate's nominating petition. The General Assembly has set forth an election challenge process and delineated the time frame within which the various steps in the process must occur and the parties that are to be included in that process. There would be no point in filing a petition to set aside with this Court and requiring that a copy be served upon the Secretary, and then permit a supplemental petition to be filed in this Court yet not require that a copy of that supplemental petition also be served on the Secretary. *Lee.*

The Election Code is clear; the specific objections to the Petition must be filed within the seven (7) day time period. There is nothing in the Code that permits the challenger to file a ... set of objections and then supplement those objections with [additional] claims after the time limit has run.

*Bishop*, 525 Pa. at 203, 579 A.2d at 862. *See also In re Lefkowitz*, 102 Pa.Cmwlth. 93, 516 A.2d 1297 (1982). In the instant matter, Tartaglione failed to file any challenge in the initial petition to the specific signatures which she challenged in her supplemental petition. While it is true that, as long as an objection has been made to **a specific signature** on the nomination petition, the challenging party may enter other challenges to that signature on alternative grounds during the subsequent hearing, it is not the law that the challenging party may assert **entirely new challenges** in a supplemental petition to set aside, filed after the last day to file challenges under Section 977. Therefore, we grant the Candidate's motion to dismiss Tartaglione's supplemental petition to set aside the Candidate's nomination petition.

 In reviewing Tartaglione's objections to the Candidate's nominating petition, we are ever mindful that the Election Code is to be liberally construed so as not to deny a candidate the opportunity to run for office or deprive the electorate of its right to vote for the candidate of its choice. *See In re Nomination Petition of Johnson*, 509 Pa. 347, 502 A.2d 142, *on remand*, 102 Pa.Cmwlth. 143, 516 A.2d 1293 (1985). The challenger bears the burden of proving that the nomination petition of the candidate is flawed, *Johnson*, and the challenger's petition must set forth the specific

grounds for the objection to facilitate the candidate's preparation of a defense. *Bishop*.

### Petition to Set Aside

With all of the additional challenges contained in the supplemental petition to set aside no longer at issue, we turn then to the original petition to set aside that contained challenges to three counties only, *viz.*, Lycoming County, Erie County, and Fayette County.[4] By agreement at the time of the hearing, the Candidate conceded, and the parties stipulated, that the Lycoming County petition did not contain the requisite one hundred valid signatures that are required. (Notes of Testimony dated March 26–27, 2001, N.T., p. 8.)

With regard to the Erie County nomination petition, the parties stipulated that two signatures should be struck. (N.T., pp. 8–9.) After subtracting these two invalid signatures, which left 108 signature on the petition, Tartaglione made specific challenges to specific signatures on the following grounds: a) the signer's name was printed; b) a conflict existed in the signer's address between the petition and the voter registration file; c) the house number and street of the elector were entered in the same column on the petition; d) ditto marks were used in the city and date fields; and e) some of the signatures were not entered on the petition in chronological order.

At the hearing, held on March 26, 2001, Tartaglione offered the testimony of Mr. Florindo Fabrizio, Erie County Clerk of Elections and Chief Registrar, and concessions were made by the Candidate that twelve additional signatures, beyond the

---

4. Tartaglione challenged 53 signatures in Lycoming County and 22 signatures in Erie County in her Petition. Tartaglione's challenge to the Fayette County petition was *only* to the circulator's affidavit on page 70, although it would affect the 50 signatures on the page challenged.

two stipulations, were invalid.[5] We find and sustain the following objections to the signatures on the nomination petition for Erie County as being invalid:

| Page No. | Side No. | Line No. | Grounds | Notes of Testimony |
|---|---|---|---|---|
| 18 | 1 | 2 | By Stipulation | Page 9, 61 |
| 18 | 1 | 16 | Registered No Party | Page 61 |
| 18 | 1 | 24 | Ditto Marks—Occupation | Page 55 |
| 18 | 1 | 25 | Ditto Marks—Occupation | Page 55 |
| 18 | 1 | 29 | Forged Signature | Page 116 |
| 18 | 2 | 32 | Not Registered | Page 24 |
| 18 | 2 | 33 | Forged Signature | Page 113 |
| 18 | 2 | 36 | Not Registered | Page 26 |
| 18 | 2 | 49 | Forged Signature | Page 117 |
| 19 | 1 | 7 | Registered Republican | Page 59 |
| 19 | 1 | 18 | Printed Signature | Page 38 |
| 19 | 1 | 21 | By Stipulation | Page 9 |
| 19 | 1 | 22 | Not Registered | Page 33 |
| 19 | 2 | 33 | Printed Signature | Page 40 |

Because the nominating petition from Erie County contained only 110 signatures, and finding that Tartaglione has successfully challenged fourteen of those signatures, the nomination petition from Erie County falls below the one hundred-signature requirement, and thus that county is struck from consideration as qualifying towards the five county requirement.

The third county that was challenged by Tartaglione in her Petition was Fayette County. With Lycoming and Erie Counties falling below the 100 signature statutory minimum, and the Supplemental Petition having been dismissed, the resolution of this election contest turns on our determination of the challenge to the Fayette County circulator's affidavit on page 70 of the nomination petition.

5. The Candidate offered the affidavit of Donald E. Wright, Jr., Esq., who was the circulator of all of the petitions in Erie County, to provide evidence that to the circulator's personal knowledge all of the signatures which were challenged were valid and offering an explanation for the alleged flaw or error. For example, on page 18, side 1, line 36, Tartaglione challenged the signature of Holly Welton. The Wright affidavit states that Ms. Welton's maiden name was Schu Schu, that she is a registered Democrat and that she was recently married. Absent an affidavit or actual testimony from the elector or the actual testimony of the circulator, which would be subject ot cross examination, the Wright affidavit was not admitted into evidence on hearsay grounds. (N.T., pp. 25–26.)

Tartaglione challenged all fifty signatures on page 70 of the Fayette County nomination petition for the **sole reason** that, "The Petition lists Fayette County as the County of the Petition signers' residence but the Circulator's affidavit attests that Allegheny is the County of [the] Petition signers' residence." (Petition to Set Aside Nomination Petition, p. 3.) She asserts that this constitutes a material defect that warrants striking all of the signatures on both sides of this page. Because page 70 contains a total of fifty signatures, if that page was struck from the count of signatures from Fayette County (originally 124 total signatures), Fayette County would also be removed from consideration as a county for purposes of the five-county requirement. The Candidate, on March 26, 2001, filed a motion to amend his nomination petition and, to that motion, attached the affidavit of Ms. Theresa Del Greco, which stated in paragraph two of the affidavit, "that she is the affiant **circulator** on the nominating petition for Victor R. Delle Donne. . . ." Paragraph four of the affidavit states, "that, she inadvertently wrote on the affidavit of circulator "Allegheny" as the County of Petition Signers [sic] Residence." Paragraph five of the affidavit recites, "that this was an error as the County of Petition Signers [sic] residence was Fayette County."

Section 977 of the Election Code, 25 P.S. § 2937, provides in pertinent part that "material errors or defects apparent on the face of the nomination petition" are amendable, after hearing, at the discretion of the court. It is beyond peradventure that the conflict in the name of the County on the front of the petition (i.e. Fayette) and that contained in the circulator's affidavit on the back of the petition (*i.e.* Allegheny) is a defect apparent its face.[6] The Supreme Court, in *Jackson v. Fields*, 478 Pa. 247, 249, 386 A.2d 533, 533 (1978), stated "that nomination petitions shall be treated as lawful for the district intended . . . if they are otherwise in order with respect to the designation of the office and residence of the candidate and of the signers, **and if the signers have not been misinformed or misled.**" Because the face of the petition lists the correct county of the petition signers' residence, and the circulator's attestation was not signed until *after* all of the petition signers had executed their signatures, we hold that the petition is otherwise in order and the signers had not been misinformed or misled into believing that they had to be electors in Allegheny County at the time they signed their names. This is, therefore, an amendable defect because it is a defect apparent on its face and may be amended at the discretion of this Court. Section 977 of the Election Code, 25 P.S. § 2937. *See also In re Castellani*, 102 Pa.Cmwlth. 170, 516 A.2d 786 (1986); *In re Snyder*, 102 Pa.Cmwlth. 165, 516 A.2d 788 (1986), *appeal quashed*, 518 Pa. 52, 540 A.2d 264 (1988).

To support the Candidate's motion to amend this obvious defect on page 70, the Candidate called the circulator, Theresa Del Greco, as a witness. Because her testimony became the critical factor in the determination by this Court in its decision to set aside the Candidate's nomination petition, this testimony is herein recited verbatim:

### Direct Examination

Q. Give your full name for the Court, please.

---

6. This is distinguishable from the situation, which also exists in this case, where the identity of the circulator is called into question, thus requiring the receipt of evidence extrinsic to the face of the document. *Nomination Petition of Minotti*, 132 Pa.Cmwlth. 623, 574 A.2d 119 (1990).

A. Theresa Del Greco.

Q. Where do you reside?

\* \* \* \*

A. Pittsburgh.

Q. Does your signature appear on petition page 70 as the circulator?

A. Yes, it does.

\* \* \* \*

Q. I show you this affidavit. Would you like her to read it into the record?

THE COURT: No. Is that your signature and everything stated therein true?

A. Yes it is.

THE COURT: And paragraph 4 states, it's in the third person, that she inadvertently wrote on the affidavit of circulator, quote, "Allegheny" as the county of petition signers' residence; and 5, that this was in error; that county of petition signers' residence was Fayette County. Is that your signature that I show you on the original affidavit?

A. Yes, it is.

THE COURT: And you took that affidavit, and is that your testimony now?

A. Yes, it is.

THE COURT: That you made a mistake and wrote Allegheny

A. Yes.

THE COURT:—instead of Fayette?

THE COURT: And I notice you are a notary public?

A. Yes.

THE COURT: And that you notarized several other petitions, pages of the petition?

A. Yes, I did.

THE COURT: And you live in Allegheny County?

A. Yes, sir.

THE COURT: And you signed in those as the notary in Allegheny County?

A. Yes, sir.

THE COURT: And I note that page 70 is sandwiched between 69 and 71. Were you not the notary in 69 and 71?

A. I believe I was.

\* \* \* \*

### Cross Examination

Q. When you circulated the petition that is page 70, were you aware that it contains the signatures of at least five persons who have been found to be not registered voters?

A. No.

Q. And at least two people who are not registered Democrats?

A. No, I wasn't.

Q. **Did you make any inquiry to ascertain whether people were registered in the proper party as Democrats before you obtained their signatures?**

A. **The petition was actually circulated by my sister-in-law.**

Q. **So you did not actually circulate the petition?**

A. **No. I had given her—she works in Uniontown, and I had given her the petition to circulate, *and she assured me that everyone who was signing was a registered Democrat and they were all legal signatures.***

Q. **So you yourself did not personally obtain any of the signatures that are on the document?**

A. **No, I didn't.**

(N.T., pp. 122–125.) (Emphasis added.)

■ This testimony eviscerates both the Candidate's motion to amend his nomination petition and the affidavit of the "circulator" in support of the motion, appended

to the motion, both of which state that **she, Theresa Del Greco, was the circulator.** While we would have allowed the amendment to change "Allegheny" County to "Fayette" County on page 70 in the circulator's affidavit because that is what Theresa Del Greco *intended,* we cannot ignore the rest of her testimony **that she was not the circulator *and,* more important, that she had no personal knowledge of any of the persons who signed their names, their addresses and whether they were registered Democrats.[7]**

When Ms. Del Greco concluded her testimony, Tartaglione moved to amend her petition to set aside and subsequently filed a written Motion to Amend Petition to Set Aside Nominating Petition to conform her

petition to reflect the facts adduced at the hearing, namely that Ms. Del Greco, who signed page 70 as the circulator, was not in fact the circulator of that page of the Fayette County nomination petition. As indicated, Ms. Del Greco admitted on cross-examination that she had not circulated that petition; that, in fact, someone else had circulated it. (N.T., p. 125.)

Tartaglione promptly raised the argument that Ms. Del Greco lacked the requisite knowledge to be a qualified circulator, and the law requires that a circulator be charged with knowledge of the authenticity of the signature of each elector, particularly as to residence, on the petition that she circulates. Essentially, Tartaglione's position is that if a circulator does not know

---

7. Ms. Del Greco's testimony on recross-examination was as follows:

Q. Of your own knowledge, your own personal knowledge, not what someone else told you, of your own knowledge, do you have any knowledge that the signers of this petition signed with full knowledge of the contents of the petition?

A. Other than what was told to me?

Q. Yes.

A. Only my sister-in-law's signature.

Q. You weren't there when any of the people who signed this petition signed it, were you?

A. No.

Q. It is your sister-in-law?

A. Yes.

Q. Other than what your sister-in-law told you, you have no basis to conclude that any of these residences are correctly stated, do you? You didn't do any independent inquiry, did you, of the residences of any of the people?

A. No. But I don't believe she would have any reason to lie about it.

Q. Do you have any independent knowledge that each person whose signature was obtained here signed on the date that they say they signed it? Any independent knowledge of your own?

A. No.

Q. And you would also have no independent knowledge that the signers are qualified electors, meaning qualified Democrats, correct?

A. Only that she was instructed to tell everyone before they would sign it, and I believe she did that.

Q. You believe your sister-in-law's judgment was accurate with respect to all 50 signatures?

A. Yes.

Q. Can you explain for me how she ended up with five nonregistered and two not registered Democrats, at least seven? Can you tell me how that happened?

A. Possibly those people weren't truthful with her. I'm not sure.

Q. You have no way of knowing, do you?

A. No.

　＊　＊　＊　＊

Q. You have no independent knowledge of your own that any of these people are residents of Fayette County, do you, other than what your sister-in-law told you?

A. Right.

Q. Is your sister-in-law a registered Democrat?

A. Yes.

Q. Why didn't she take the circulator's oath?

A. The reason that she didn't sign it was a mistake, because she had to go out of town, and she had given it to me. She dropped it off at my house, and I didn't realize she hadn't signed it, and she assured me that all the signatures were good, and so I signed it. (N.T., pp. 128–131.)

the signer, or perhaps more important, does not know or is not familiar with the signer's signature, place of residence or party affiliation, then the circulator does not have the requisite knowledge concerning that elector and, therefore, the electors' signatures on that petition must be struck as not properly verified. We must agree.

The requirements of Section 909 of the Election Code, 25 P.S. § 2869, pertinently state:

Each sheet shall have appended thereto the **affidavit of the circulator** of each sheet, setting forth—(a) that he or she is a qualified elector duly registered and enrolled as a member of the designated party of the State ...; (b) his residence ...; **(c) that the signers thereto signed with full knowledge of the contents of the petition; (d) that their respective residences are correctly stated therein; (e) that they all reside in the county named in the affidavit; (f) that each signed on the date set opposite his name; and (g) that, to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party of the State** ....

(Emphasis added).

While this Court has held that the Election Code does not require that the individuals who have actually circulated a nomination petition make the required affirmations, the affiant must have knowledge of the qualifying facts set forth in Section 909, referred to above. *See In re Glazier*, 474 Pa. 251, 378 A.2d 314 (1977) (holding that where the individual who attested to the nomination petition as circulator did not obtain any of the signatures on the sheets, did not know the signators, their place of residence, occupation or the date they signed, the signatures on those petitions were invalid); *In re DeFino*, 25 Pa.Cmwlth. 646, 362 A.2d 467 (1976) (concluding that the person who did not personally circulate two sheets of a nomination petition, but nevertheless had the requisite knowledge by reason of his own acquaintance in the district and his reliance on information furnished to him by the actual circulators who worked on the election board, was valid); *In re Elliott*, 26 Pa.Cmwlth. 20, 362 A.2d 438, *aff'd*, 466 Pa. 463, 353 A.2d 446 (1976) (which held that because the circulator, whose name was signed by his father, had little knowledge of the manner in which the signatures were obtained, the petition was invalid); *In re Frank*, 173 Pa.Super. 400, 98 A.2d 255 (1953) (fact that affiant had requisite knowledge of signers, their residences, their party affiliation, etc. did not render the circulator's affidavit defective where affiant did not personally secure signatures of all of the electors).

Based on the testimony of Ms. Del Greco, it is clear that she did not have the requisite knowledge and was totally unaware of the vital facts required by Section 909 of the Election Code. While this Court has allowed a circulator's affidavit to be rehabilitated or another affidavit substituted, the candidates in those cases consistently had been required to present **some evidence** to justify amending a circulator's affidavit. *DeFino, Elliott.* In the instant matter, the Candidate failed to present *any* evidence in this regard and also failed to request that he be permitted to amend page 70 of the nomination petition. Particularly noteworthy is the absence of testimony from the actual circulator of the Candidate's nomination petition, Ms. Del Greco's sister-in-law, to enable this Court to ascertain whether she had the requisite knowledge and qualifications to permit amendment of the nominating petition. As the Supreme Court stated in *Glazier*:

If this record would permit amendment or is sufficient in itself to validate the unlawful circulator's affidavits in question, we would, in effect, be judicially nullifying section 909 of the Code. In the name of open elections and justice, we are asked to ignore the law or emasculate it. We will not do so but find the disputed sheets to be invalid, thus invalidating the signatures contained thereon and reducing the number of valid signatures to below the minimum number required.

*Glazier*, 474 Pa. at 255, 378 A.2d at 316. Based on the same principles addressed earlier in this opinion concerning an amendment by way of filing a supplemental petition (*i.e.*, specific challenges once challenged may be challenged on alternative grounds), and because Ms. Del Greco did not have the requisite knowledge to execute a valid circulator's affidavit, we are obliged to grant Tartaglione's motion to amend her petition to set aside and to invalidate page 70 of the nomination petition, striking the fifty names of electors in Fayette County therein. Accordingly, we thereby invalidate the Fayette County nomination petition for the lack of one hundred signatures from consideration of the five-county requirement, and are obliged to grant Tartaglione's Motion to Amend Petition to Set Aside Nominating Petition and set aside the nomination petition of Delle Donne. Accordingly, his name will not be placed on the ballot.

### Supplemental Petition to Set Aside Nomination Petition

Because the Court's decision in this election contest may be appealed to the Supreme Court, although not necessary to the decision herein, we will dispose of the challenges contained in the Supplemental Petition in an effort to be as thorough as possible. The Court finds that, the circulator's affidavit aside, the Candidate still lacked sufficient signatures in each of five counties to support his nomination petition.

### Fayette County

In her Supplemental Petition, Tartaglione challenged additional signatures in Fayette County on the basis that certain individual electors were not registered Democrats. At the outset, we first find that, either by stipulation or from the evidence submitted, the following signatures were not those of registered Democrats in Fayette County:

| Page No. | Side No. | Line No. | Grounds | Notes of Testimony |
|---|---|---|---|---|
| 69 | 1 | 12 | By Stipulation | Page 10 |
| 69 | 1 | 26 | By Stipulation | Page 11 |
| 69 | 1 | 27 | By Stipulation | Page 11 |
| 69 | 1 | 28 | By Stipulation | Page 11 |
| 70 | 1 | 7 | By Stipulation | Page 10 |
| 70 | 1 | 13 | Not Registered | Page 74 |
| 70 | 2 | 32 | By Stipulation | Page 11 |
| 70 | 2 | 33 | By Stipulation | Page 10 |
| 70 | 2 | 39 | By Stipulation | Page 10 |

| | | | | |
|---|---|---|---|---|
| 70 | 2 | 41 | By Stipulation | Page 10 |
| 71 | 1 | 2 | By Stipulation | Page 10 |
| 71 | 1 | 8 | By Stipulation | Page 10 |
| 71 | 1 | 14 | By Stipulation | Page 11 |
| 71 | 2 | 35 | By Stipulation | Page 11 |
| 71 | 2 | 37 | By Stipulation | Page 10 |

Accordingly, these signatures must be struck. 25 P.S. § 2872.1.

Tartaglione presented the testimony of Ms. Laurie Nicholson, Director of Elections in Fayette County and the official custodian of Fayette County voter registration records who was questioned regarding her search of all election records. She assured this Court that her search was as complete as possible. She also stated that Fayette County is in the process of changing those "addresses" which are post office boxes to street addresses for "911" call purposes and that she had no way of cross-checking an elector's registration where a post office box had been given. (N.T., pp. 66–67.) We remark that, in ruling on the substantive challenges, we deem credible the testimony of Ms. Nicholson.

The next group of challenges concerned situations where the signature was alleged not to have been that of a registered elector in the district or as not being that of a registered elector at the address given. Ms. Nicholson generally testified that the addresses of the signers did not provide ·sufficient information for her to search them, or that there was no registered voter by that name at the address given. The Candidate attempted to establish that allegations that the signers were not registered may have been based upon a misreading of the signatures, but without any rebuttal evidence being submitted by the Candidate, and based on this Court's inspection of the challenged signatures, the Court finds that the following must be struck.

| Page No. | Side No. | Line No. | Grounds | Notes of Testimony |
|---|---|---|---|---|
| 69 | 1 | 2 | Not Registered—Conflict/ name illegible | Page 69 |
| 70 | 1 | 9 | Not Registered—Conflict | Page 83 |
| 70 | 2 | 44 | Not Registered—Conflict | Page 76 |
| 71 | 1 | 10 | Not Registered—Conflict | Page 79 |
| 71 | 1 | 25 | Not Registered—Conflict | Page 81 |

The next category of signatures were challenged on the basis of illegibility. Tartaglione alleged that five signatures were so illegible as to preclude verification. We agree. As the Candidate did not present any rebuttal evidence by which we would allow an amendment to these signatures,

we must strike these also from Candidate's nomination petition.

| Page No. | Side No. | Line No. | Grounds | Notes of Testimony |
|---|---|---|---|---|
| 69 | 2 | 31 | By Stipulation–Illegible | Page 12 |
| 70 | 1 | 5 | By Stipulation–Illegible | Page 12 |
| 70 | 1 | 17 | By Stipulation–Illegible | Page 12 |
| 70 | 2 | 30 | By Stipulation–Illegible | Page 12 |
| 70 | 2 | 31 | By Stipulation–Illegible | Page 12 |

Finally, the Court is obliged to strike the signature on page 70, side 1, line 25 where it lacked an identifying middle initial and two electors with that name (Lawrence/Laurence Smith), one a registered Democrat and the other registered "no party," resided at the address given. After an examination of the signature on the nomination petition and the voter registration cards, and in the absence of any evidence from Candidate to rehabilitate the signature, the Court was unable to identify the elector that signed the petition. Another signature is struck because the name was printed. (Page 71, side 1, line 25; N.T. p. 86.) One more signature is struck based on the testimony of Michelle Dresbold, Tartaglione's handwriting expert, that it was signed by the elector's wife under a purported power of attorney. (Page 70, Side 2, Line 35; N.T. p. 120.) A strike was denied where the electors' signature was challenged because it was not in chronological order, for those who used a nickname, for those where there were ditto marks used to identify the electors'

address, and where, in the Court's view, the signature was obviously that of the elector. The Fayette County petition, as originally filed, held 124 signatures. Tartaglione successfully challenged twenty-seven signatures thereby rendering the number of signatures contained in the Fayette County petitions less than the required one hundred signatures.

### Cambria County

By stipulation of the parties, eleven names on the Cambria County petition were struck on the basis that the electors were not registered Democrats, along with all the names contained on page 13 and page 80, encompassing sixteen names, because the circulators of those petitions were registered republicans. Two names were struck by stipulation because they were printed, and two additional signatures were struck as printed names by individual challenge. The total number of signatures struck at this point was twenty-eight, as indicated below:

| Page No. | Side No. | Line No. | Grounds | Notes of Testimony |
|---|---|---|---|---|
| 13 | 1 | 1–7 | Circulator is Reg. Rep. | Page 12 |
| 80 | 1 | 1–9 | Circulator is Reg. Rep. | Page 12 |
| 9 | 2 | 46 | Not Registered | Page 13 |

| 10 | 1 | 15 | Not Registered | Page 13 |
|---|---|---|---|---|
| 10 | 1 | 22 | Not Registered | Page 13 |
| 10 | 1 | 4 | Registered Republican | Page 13 |
| 10 | 1 | 8 | Registered Republican | Page 13 |
| 10 | 1 | 9 | Registered Republican | Page 13 |
| 11 | 1 | 22 | Registered Republican | Page 13 |
| 9 | 1 | 28 | Not Registered Democrat | Page 13 |
| 10 | 1 | 6 | No Party | Page 14 |
| 10 | 1 | 18 | No Party | Page 14 |
| 9 | 2 | 47 | Printed Name | Page 14 |
| 12 | 1 | 12 | Printed Name | Page 14 |

Tartaglione then presented the testimony of Fred Smith, Director of Elections and Chief Registrar of Cambria County. One additional name was struck after testimony by Mr. Smith that the signer was a registered Republican. (Page 10, Side 1, Line 7; N.T., p. 101.) At this point, Candidate conceded that he was below one hundred valid signatures in Cambria County. (N.T., p. 102).

### Conclusion

In conclusion, the Candidate began the hearing in this election contest with seven counties above the one hundred-signature minimum. Three were struck because of successful challenges set forth in Tartaglione's original petition to set aside, *viz.* Erie, Lycoming and Fayette. Under the Supplemental Petition, Tartaglione successfully challenged the Cambria County nomination petition, and further, successfully challenged the nomination petition from Fayette County on grounds separate from the reasons and/or challenges alleged in her original Petition. Under either analysis, the Candidate lacks sufficient counties that meet the statutory one hundred-signature, five-county minimum requirement and the nomination petition of the Candidate, Victor R. Delle Donne, will be set aside.

### ORDER

**AND NOW,** the 6th day of April, 2001, after considering the petition of State Senator Christine M. Tartaglione to set aside the nomination petition of Victor R. Delle Donne, a candidate for the office of Judge of the Commonwealth Court of Pennsylvania in the forthcoming Democratic Primary Election, filed on March 13, 2001, her supplemental petition to set aside the same nomination petition filed on March 14, 2001, and various motions presented by the parties related to those petitions, and after evidentiary hearings were conducted on March 26 and 27, 2001, this Court enters the following order:

Regarding the motions: (1) the candidate's motion to dismiss the petition to set aside his nomination petition is denied, (2) the candidate's motion to dismiss the supplemental petition to set aside his nomination petition is granted, and (3) the candidate's motion to amend his nominat-

ing petition is denied. The petitioner's motion to amend her petition to set aside the nomination petition is granted.

On the merits of petitioner's petition to set aside the nomination petition of the candidate, Victor R. Delle Donne, the Court having found that the candidate failed to secure at least 100 signatures in each of five counties as required by Section 912.1(10) of the Election Code, 25 P.S. § 2872.1(10), the said nomination petition of Victor R. Delle Donne is hereby set aside.

The Secretary of the Commonwealth is directed not to certify the name of Victor R. Delle Donne as a candidate for the Democratic nomination for Judge of the Commonwealth Court of Pennsylvania, and his name shall not appear on the ballot for the 2001 primary election.

The Chief Clerk is directed to notify the parties and their counsel of this order and also shall forward a certified copy of it to the Secretary of the Commonwealth.

Each party shall bear his or her own costs.