## Beynon Appeal.

Argued March 27, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Milton J. Kolansky,* with him *Leo G. Knoll,* for appellant.

*George H. Shaffer, Jr.,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 26, 1952:

This is an appeal from an order of the Court of Common Pleas of Dauphin County setting aside the nomination petition of Daniel Beynon as the Republican candidate for the office of Representative in Congress from the Tenth Congressional District of Pennsylvania.

Daniel Beynon filed his nomination petition on February 18, 1952 which was the last day for filing such petitions. It contained 236 signatures. Two hundred signatures are required by law. On February 25, 1952, the last day for objecting to nomination petitions, Nelson Nichols, a candidate for the same office, filed a petition to strike off the nomination petition of Beynon and it was served on the Secretary of the Common-

wealth. The court fixed February 27, 1952 as the date for a hearing. Nichols' petition alleged that 30 of the names on the Beynon petition also appeared on the petition of Joseph L. Carrigg, a third candidate for the office, that 4 names were signed twice on the Beynon petition, that 51 names were not in the handwriting of the persons who purported to sign Beynon's petition and that one signer of the Beynon petition was dead prior to the first date for signing such petitions. At the hearing Nichols introduced into evidence the Beynon petition, and then, over the objection of counsel for Beynon, the Carrigg petition, for the purpose of showing that certain persons signed the Carrigg petition and then later signed the Beynon petition. Nichols also offered Exhibit 3 which was described by the court below as a ". . . recapitulation and tabulation of the names of forty-six (46) persons allegedly appearing on both the Beynon and Carrigg petitions and including the date each person signed." Nichols, to prove his case, also offered affidavits by certain persons that they had not signed the Beynon petition, although their names appeared thereon.

On February 29, 1952, Nichols filed a motion to reopen the hearing and present additional testimony and amend his pleadings. This was granted, exceptions were filed to the court's order and the next hearing was held on March 5, 1952 after an amended petition was filed. No service of the amended petition or the order allowing it and reopening the proceeding was made upon the Secretary of the Commonwealth. At the second hearing Nichols proved by the Clerk of the Registration Commission and the clerk in charge of the official registration that there was only one registered Republican voter for the signatures which were objected to by him.

The lower court summarized its findings as follows: "From an inspection of the Beynon and Carrigg nomination petitions and from the testimony of the official registrars, the Court finds that (1) thirty-six (36) persons signed the Beynon petition at a date subsequent to the date of signing the Carrigg petition and that under the law these signatures are therefore invalid; (2) that seven (7) persons signed the Beynon petition on the same day they signed the Carrigg Petition and therefore, these names must be stricken from the Beynon petition; (3) that seven (7) persons signed the Beynon petition *twice* and that the second signature of each of these seven (7) persons is invalid. Under the view we have taken, the Beynon petition contains fifty (50) invalid signatures. The nomination petition of a candidate for the office of Representative in Congress must contain the signatures of at least two hundred (200) registered and enrolled members of the proper party, as heretofore stated. Since we hold that fifty (50) signatures on the Respondent's petition are invalid, it follows that Respondent's petition containing two hundred thirty-six (236) signatures must be set aside because it contains only one hundred eighty-six (186) of the two hundred (200) valid signatures required by law. . .". The lower court on March 11, 1952 therefore ordered the Beynon petition set aside. After exception this appeal was taken.

Appellant does not contest the findings on the merits but objects to the procedure adopted by the lower court. This he questions on two grounds: (1) The lower court had no right to entertain the proceedings because no service of either the order reopening the proceedings or the amended petition was made on the Secretary of the Commonwealth; (2) the original petition to strike off the nominating petition did not state a cause of action

and the court should not have allowed the amendment after the time for objecting had expired.

(1) Section 977 of the Pennsylvania Election Code of 1937, as amended by the Act of May 21, 1943, P. L. 353, §1, 25 PS §2937 provides, in part: ". . . A copy of said petition [the petition objecting to the nomination petition] shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed." The original petition objecting to Beynon's petition was timely served on the Secretary of the Commonwealth. The evident purpose of this section was to advise the official with whom the nomination petition was filed that objections thereto had been made so that the name of the candidate whose petition is attacked would not be placed on the ballot until the controversy is finally determined. Here such purpose was effectuated within the statutory period by service of the original petition to set aside Beynon's petition. The *American Labor Party Case,* 352 Pa. 576, 44 A. 2d 48, is distinguishable. There, unlike this case, the original petition objecting to the nomination petitions was not served upon the County Board of Elections until after the time for objecting had expired.

(2) Undoubtedly the original objecting petition was not artistically drawn. It made no reference to the fact that the names which were found on both the Carrigg petition and the Beynon petition were signed on the Carrigg petition on a date prior to the date on which they were signed on the Beynon petition. It also contained no allegation that the signatures, which were alleged not to be in the handwriting of the individuals purportedly signing, were signed without authority. However, the objector specifically attacked the validity of signatures upon the nominating petition, and Beynon, the candidate named therein, had notice that he must uphold the validity of his petition in this respect if the objector

presented proof of invalidity. A petition challenging such qualification need not be drafted with the nicety required of a formal pleading in an action at law.[1] If it is timely filed and alleges a *prima facie* case, the court should, in the public interest, undertake its consideration. At the hearing afforded by the Act, the respondent candidate is given opportunity to meet the attack upon his petition. Thus in this case Beynon at the hearing could have proved, if he had such evidence available, that the signatures on the Carrigg petition were actually signed after the signatures on his petition or that the signatures which were alleged to be in handwriting other than that of the purported signers were placed there with the authority of those whose names appeared thereon. The petition therefore on its face set forth a cause of action, although there may have been a defense to such cause.

At the first hearing Nichols proved a clear case for the invalidity of the nomination petition of Beynon. As shown by the above quoted summary of the lower court's finding, it was only necessary to look at the Beynon petition and compare it with the Carrigg petition in order to see that Nichols had proved a *prima facie* case. Beynon had been apprised by the first petition to strike off his nomination petition that one of the general grounds of invalidity was the duplications on the Carrigg petition and therefore he was in a position to offer any countervailing proof which he had.

---

[1] Any duplications could have been ascertained by a mere comparison. However, it was undoubtedly necessary for the objector to set forth the names of the specific signatures he attacked as not being in the handwriting of the purported signers since that is the only method by which a proposed candidate would be advised of the proof he had to meet. This Nichols did.

538

The allowance of the amendment and the second hearing, although it gave Nichols the opportunity to present more detailed proof, also gave Beynon a further chance to produce evidence against the charges.

The allowance of the amendment was a matter for the discretion of the hearing judge: See *Pazdrak's Contested Election*, 288 Pa. 585, 137 A. 109; *Election Cases*, 65 Pa. 20, 35. The opinion of the lower court states, "We feel that in such a case, affecting not only the Objector and the Respondent as individuals but the public interest as well, the merits should take precedence over technical rules of pleading and that the Court in the exercise of its discretion properly allowed the Objector to amend his petition to conform with the apparent facts." We agree that where, as here, there are general allegations of the specific grounds of invalidity which sufficiently advise the proposed candidate of the errors in his nomination petitions so that he is in a position to present any defense he may have to such allegations, it is not an abuse of discretion to allow an amendment such as was allowed by the lower court.

Order affirmed. Costs to be paid by appellant.