852 A.2d 1193

# In re Nomination Petition of Latrice Y. BRYANT, as Candidate for the Democratic Nomination for Representative of the General Assembly in the 198th District

## Appeal of Latrice Y. Bryant.

Supreme Court of Pennsylvania.

Submitted April 7, 2004.

Decided June 29, 2004.

Robert J. Mulligan, Esq., Philadelphia, for Latrice Y. Bryant.

Thomas Martin, Esq., Philadelphia, for Rosita Youngblood.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice SAYLOR.

The controlling issue in this election controversy concerns the application of the statutorily prescribed seven-day deadline for advancing specific substantive grounds for challenging a nomination petition.

In February of this year, Appellant, Latrice Y. Bryant ("Candidate"), lodged with the Secretary of the Commonwealth a nomination petition as a candidate for the Democratic nomination for the Office of Representative in the Pennsylvania General Assembly from the 198th Legislative District. Appellee, Rosita Youngblood ("Objector"), filed a timely challenge in the Commonwealth Court, attacking Candidate's petition on the basis of the signature and affidavit of circulation requirements subsumed within Sections 908, 909, and 912.1 of the Election Code,[1] 25 P.S. §§ 2868, 2869, 2872.1. In this submission, Objector purported to reserve, to the time of hearing, the right to pursue additional grounds for setting aside Candidate's nomination petition.

After the expiration of the seven-day time period allowed for challenging nomination petitions, *see* 25 P.S. § 2937 ("All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto[.]"), Objector attempted to assert a new substantive challenge by way of her pre-hearing memorandum. Specifically, Objector for

1. Act of June 3, 1937, P.L. 1333 (as amended 25 P.S. §§ 2600–3591).

the first time questioned the validity of Candidate's statement of financial interests filed with the State Ethics Commission pursuant to Section 1104(b) of the Public Official and Employee Ethics Act,[2] 65 Pa.C.S. § 1104(b), based on Candidate's undisputed failure to disclose several items of responsive information, including her employment in the office of a Philadelphia City Councilman within the year preceding her candidacy. *See generally* 65 Pa.C.S. § 1104(b)(3) ("Failure to file the [financial disclosure] statement in accordance with the provisions of this chapter shall … be a fatal defect to a petition to appear on the ballot."). At the outset of the hearing, Objector withdrew all other grounds previously asserted in support of her challenge to Candidate's nomination petition.

After hearing, the Commonwealth Court sustained the objection in an unpublished, single-judge disposition. Substantively, the court based its decision on *In re Nomination Petition of Anastasio*, 820 A.2d 880 (Pa.Cmwlth., 2003) (holding that a prospective candidate's failure to disclose a source of income on his financial disclosure statement gave rise to a fatal defect to the nomination petition), *aff'd per curiam*, 573 Pa. 512, 827 A.2d 373 (2003).[3] The court recognized the difficulties arising from the late assertion of the controlling objection; however, it found that strict adherence to the seven-day requirement was not required as concerns challenges based on an incomplete or untimely-filed financial disclosure statement, since little preparation is necessary for a

**2.** Act of October 15, 1998, P.L. 729 (as amended 65 Pa.C.S. § 1101–1113).

**3.** This Court has since clarified that *Anastasio* involved a situation in which the prospective candidate completely failed to disclose a primary source of employment income, as distinguished from a situation in which there is a technical failure to supply discrete responses in the prescribed manner, but the essential information can nevertheless be discerned upon review of the candidate's financial statement as a whole. *See In re Nomination Petition of Benninghoff*, 578 Pa. 402, 852 A.2d 1182 (2004). In the latter circumstance, the Court has deemed the candidate's substantial compliance sufficient to avoid application of the Ethic's Act's fatal defect provision, and has thus held that amendment is permitted to bring the candidate's statement into full compliance. *See id.*

candidate to defend against such objections. Additionally, the Commonwealth Court determined that, in light of the salutary purposes of the Ethics Act, and in view of the fatal defect provision set forth there, a partisan objector should not be permitted to waive the entitlement of the electorate to be informed of critical information regarding the candidate.

The precedent of this Court, however, is to the contrary. *Commonwealth, State Ethics Comm'n v. Cresson*, 528 Pa. 339, 597 A.2d 1146 (1991), holds that petitions to set aside nomination petitions founded on asserted violations of the financial disclosure provisions of the Ethics Act must be filed within the seven-day period prescribed under Section 977 of the Election Code. *See id.* at 344–45, 597 A.2d at 1149. *Cresson's* reasoning is comprised of a plain-meaning interpretation of Section 977, in particular, the statute's admonition that a nomination petition that remains unchallenged within the seven day period "shall be deemed to be valid," 25 P.S. § 2937, and an *in pari materia* construction of the Ethics Act. *See Cresson*, 528 Pa. at 343, 597 A.2d at 1148 ("Since the actual document the [objector] seeks to attack, i.e., the nomination petition, is a creation of the Election Code, the specific time limit imposed by the Code for objecting to such petitions must also apply."). The *Cresson* Court also indicated that its decision was in adherence to the legislative scheme creating a relatively tight timeline for review through which objections to nominations must be channeled as a means of fostering orderliness, certainty, and stability in the election process. *See id.* at 344–45, 597 A.2d at 1149 (quoting *Turtzo v. Boyer*, 370 Pa. 526, 531, 88 A.2d 884, 886 (1952)).[4]

4. Although in *Cresson*, the objector (the State Ethics Commission) failed to file any objections within the relevant time period, the case is sufficiently analogous to the present circumstances, since this Court has uniformly held that new substantive objections are barred by the expiration of the seven-day time period, despite the timely filing of a challenge based upon substantively distinct grounds to set aside a nomination petition. *See, e.g., In re Nomination Petition of Bishop*, 525 Pa. 199, 203, 579 A.2d 860, 862 (1990) ("The Election Code is clear; the specific objections to the Petition must be filed within the seven (7) day time period. There is nothing in the Code that permits the challenger to file a general set of objections and then supplement those objections with more detailed claims after the time limit has run. Were

Objector relies principally on cases that have recognized the discretionary authority of trial courts to allow amendments to objections. *See, e.g., In re Nomination Petition of Stuski,* 548 Pa. 338, 697 A.2d 235 (1997); *In re Appeal of Beynon,* 370 Pa. 532, 88 A.2d 789 (1952); *In re Nomination Petition of Cooper,* 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994). This line of decisions, however, does not extend unlimited discretionary authority to trial courts; rather, this Court has expressly recognized that the limits of such discretion are defined by the relationship between the attempted amendment and the timely-filed objections. *See Stuski,* 548 Pa. at 344 n. 7, 697 A.2d at 238 n. 7 (holding that "as long as an objection has been made to signatures on the nomination petition, the challenging party can make other challenges *to those signatures* based on the Election Code during the hearing on the petition to set aside" (emphasis added)); *Appeal of Beynon,* 370 Pa. at 538, 88 A.2d at 792 (holding that, "*where, as here, there are general allegations of the specific grounds of invalidity* which sufficiently advise the proposed candidate of the errors in his nomination petitions ..., it is not an abuse of discretion to allow an amendment" (emphasis added)).[5] Objector's effort in this case,

we to rule otherwise, we would be eviscerating the clear meaning and intent of the statute."); *accord In re Nominating Petitions of Duffy,* 535 Pa. 286, 288–89, 635 A.2d 111, 112 (1993); *In re Nomination Petition of Wagner,* 510 Pa. 584, 587–88, 511 A.2d 754, 756 (1986); *In re Nomination Petition of Jones,* 505 Pa. 50, 65, 476 A.2d 1287, 1295 (1984).

While *Cresson* concerned the predecessor statute to Section 1104, there are no material differences between the prior and present statutes. *Compare* 65 P.S. § 404(b)(3) (superseded), *with* 65 Pa.C.S. § 1104(b)(3). Most notably, the fatal defect provision was already added to the statute years before the events giving rise to *Cresson,* in apparent response to this Court's decision in *Commonwealth, State Ethics Comm'n v. Baldwin,* 498 Pa. 255, 445 A.2d 1208 (1982). *See generally In re Cioppa,* 533 Pa. 564, 568–70, 626 A.2d 146, 148–49 (1993) (plurality) (explaining the genesis of the fatal defect provision).

5.  We recognize that the Commonwealth Court's decision in *Cooper* may be read as not fully aligning with these principles. *See Cooper,* 163 Pa.Cmwlth. at 435–36, 643 A.2d at 718–19 (suggesting that amendment of objections to a nomination petition may be allowed at any time to change the legal (as opposed to factual) basis for the challenge and allowing the broadening of objections from an assertion of a violation of district residency requirements to add a challenge based on an asserted violation of state residency requirements). In this regard, however, it is

on the other hand, was to pursue an entirely new objection subsequent to the expiration of the statutorily-prescribed seven-day period.

■ This Court's decisions here and *Cresson* do not eliminate the availability of all remedies pertaining to a candidate's failure to file a statement of financial interests in compliance with the Ethics Act after the running of the seven-day period prescribed in Section 977. *See, e.g.,* 65 Pa.C.S. § 1108 (prescribing penalties for financial disclosure violations). We merely reconfirm *Cresson's* holding that, in light of the requirement that a nomination petition "shall be deemed to be valid" where it is unchallenged within the requisite period, 25 P.S. § 2937, a candidate's noncompliance with Section 1104 of the Ethics Act may not be newly raised as a basis for setting aside a petition outside of the statutorily-prescribed period.

The order of the Commonwealth Court is reversed.

Justice NIGRO did not participate in the consideration or decision of this case.

Justice CASTILLE files a concurring opinion in which Justice EAKIN joins.

Justice CASTILLE, concurring.

I join the Majority Opinion with the exception of its discussion of *In Re Nomination Petition of Anastasio,* 820 A.2d 880 (Pa.Cmwlth., 2003), *aff'd per curiam,* 573 Pa. 512, 827 A.2d 373 (2003), including the notation that this Court supposedly "clarified" *Anastasio* in *In re Nomination Petition of Benninghoff,*

noteworthy that *Cooper* did not acknowledge this Court's *Cresson* decision. Indeed, in other decisions, the Commonwealth Court itself has acknowledged this Court's determination that the Legislature intended a stricter view. *See, e.g., In re Nomination Petition of Delle Donne,* 779 A.2d 1, 4 (Pa.Cmwlth., 2001) (observing that "it is not the law that the challenging party may assert entirely new challenges in a supplemental petition to set aside, filed after the last day to file challenges under Section 977.").

Although *Cooper* has been cited affirmatively by this Court, *see Stuski,* 548 Pa. at 345 n. 7, 697 A.2d at 238 n. 7, the Court did not specifically approve *Cooper's* approach to delimiting the boundaries of a trial court's discretion in the amendments context.

578 Pa. 421, 423, 852 A.2d 1193, 1194 n.3 (2004). As I noted in my Concurring Opinion in *Benninghoff*, rather than distinguish and impliedly approve the Commonwealth Court's opinion in *Anastasio*, I would specifically disapprove of it. The unexplained affirmance in *Anastasio* created no precedential authority in this Court. I disagree, as I did in *Benninghoff*, with the fictional reinterpretation of *Anastasio*, construing it as if it was decided under the new "substantial compliance" rule set forth in *Benninghoff*. *Anastasio* employed a draconian *per se* approach to defects in Financial Statements, which was displaced by the entirely different, albeit amorphous "substantial compliance" rule manufactured in *Benninghoff*. *Anastasio* should be specifically disapproved to end any confusion in this area.

Justice EAKIN joins this concurring opinion.