IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Nomination Petition of | : | |
| Kami Stulginskas for | : | |
| Senator in the Pennsylvania | : | No. 89 M.D. 2024 |
| General Assembly from the | : | |
| 45th Senatorial District | : | Heard: March 4, 2024 |
| | : | |
| Objection of: Stephen | : | |
| Schlauch, Steven Patrick, | : | |
| and Dave Majernik | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION
BY JUDGE McCULLOUGH                                   FILED:  March 9, 2024

Before this Court is a Petition to Set Aside the Nomination Petition (Petition to Set Aside) of Kami Stulginskas (Candidate) filed by Stephen Schlauch, Steven Patrick, and Dave Majernik (Objectors), in which Objectors seek to remove Candidate from the ballot as a Republican Candidate for the Office of Senator in the 45th Senatorial District in the Pennsylvania General Assembly in the General Primary Election to be held on April 23, 2024.

## I. Background

On February 13, 2024, Candidate filed a Nomination Petition with the Department of State, Bureau of Elections, seeking to have her name certified for nomination at the Republican Primary Election to be held on April 23, 2024, as a candidate for Senator in the 45th Senatorial District in the Pennsylvania General Assembly.  The Nomination Petition, on its face, contains a total of **699** signature lines.

Pursuant to Section 912.1(13) of the Pennsylvania Election Code (Election Code),[1] a candidate for Senator in the General Assembly must present at least **500** valid signatures of registered and enrolled electors of the political party of the candidate.

On February 20, 2024, Objectors, all of whom are registered and enrolled Republican electors of the 45th Senatorial District, filed the Petition to Set Aside in this Court. In their Petition to Set Aside, prior to the stipulations and the hearing, Objectors contended that Candidate's Nomination Petition should be set aside because Candidate did not have the requisite **500** signatures of electors to appear on the ballot for the general primary election. More specifically, Objectors challenged **245**[2] of the **699** signatures on the Nomination Petition as invalid on multiple grounds, including individual signature line challenges and page challenges to certain aspects of the circulator statements. At that juncture, the total number of unchallenged signatures was **454**.

On February 21, 2024, this Court entered a Scheduling and Case Management Order (Order) scheduling a hearing on the Petition to Set Aside for Monday, March 4, 2024, at 9:30 a.m., and imposing certain duties and obligations upon Objectors and Candidate. Therein, (1) Objectors were ordered to secure the services of a court stenographer for the hearing and, if signatures were challenged,

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, added by Section 2 of the Act of December 12, 1984, P.L. 968, 25 P.S. § 2872.13.

[2] In their Petition to Set Aside, Objectors mistakenly asserted that they were challenging **247** signature lines. The spreadsheet attached to Objectors' filing, however, reflected only **245** challenged lines.

to secure the presence of a SURE System[3] operator for the hearing; (2) Objectors and Candidate were ordered to file a list of all witnesses intended to testify at the hearing; (3) Objectors and Candidate or Candidate's representative were ordered to immediately arrange to meet a SURE System operator, if necessary, to review before the hearing each and every challenged signature; (4) Objectors and Candidate were ordered to file a stipulation of the parties identifying the total number of completed signatures submitted; the total number of uncontested signatures submitted; the total number of signatures challenged; each and every signature challenged, identified by page number and line number, and the basis for the objection; and each and every signature to be stricken as invalid or for which an objection is to be withdrawn, identified by page number and line number, if the parties reach such a stipulation; (5) Candidate was ordered to file a list of all signatures, identified by page number and line number, that were facially defective and that she intended to rehabilitate, also stating the manner in which she intended to rehabilitate them; and (6) Objectors and Candidate were ordered to file all of the foregoing items with this Court no later 48 hours in advance of the hearing.[4]   The Order also stated that Objectors and Candidate may file a memorandum of law in support of their respective positions. Additionally, the Order stated that a party's failure to comply with any provision of the Order might preclude the noncompliant party from presenting evidence and could result in the imposition of monetary sanctions.

---

[3] As this Court has previously noted, "[t]he SURE system is the Statewide Uniform Registry of Electors, the statewide database of voter registration maintained by the Department of State and administered by each county." *In re Morrison-Wesley*, 946 A.2d 789, 792-93 n.4 (Pa. Cmwlth.), *aff'd*, 944 A.2d 78 (Pa. 2008).

[4] On February 29, 2024, this Court granted Objectors' Application to file all items required or permitted by paragraphs 2, 3, and 4 of the Order no later than Friday, March 1, 2024, at 9:30 a.m.

## II.  Pre-Trial Stipulations

### A.  Stipulated Invalid

On Candidate's Nomination Petition, there were **699** total signatures. In Objectors' Petition to Set Aside, Objectors challenged **245** signatures on Candidate's Nomination Petition.  A total of **454** signatures were unchallenged by Objectors.

On March 1, 2024, Objectors filed a Status Report.  According to the Status Report, the Candidate stipulated the following **47** lines were invalid:

- Page 1, Line 9
- Page 1, Line 10
- Page 2, Line 4
- Page 2, Line 5
- Page 2, Line 12
- Page 2, Line 13
- Page 2, Line 15
- Page 2, Line 16
- Page 2, Line 19
- Page 3, Line 11
- Page 3, Line 25
- Page 4, Line 21
- Page 4, Line 22
- Page 5, Line 3
- Page 5, Line 6
- Page 5, Line 13
- Page 5, Line 17
- Page 5, Line 21
- Page 6, Line 10
- Page 7, Line 4
- Page 7, Line 6
- Page 7, Line 23
- Page 9, Line 5
- Page 11, Line 4
- Page 11, Line 6
- Page 12, Line 9

- Page 12, Line 18
- Page 15, Line 27
- Page 16, Line 3
- Page 16, Line 18
- Page 16, Line 19
- Page 16, Line 25
- Page 17, Line 2
- Page 17, Line 17
- Page 18, Line 8
- Page 21, Line 7
- Page 25, Line 4
- Page 25, Line 9
- Page 29, Line 1
- Page 30, Line 6
- Page 30, Line 10
- Page 30, Line 15
- Page 31, Line 3
- Page 31, Line 4
- Page 31, Line 5
- Page 31, Line 6
- Page 32, Line 12

### B. Stipulated Valid

Also, based on the pretrial stipulations, Objectors stipulated that the following **12** signature lines (of the **245** originally challenged) were valid and, withdrew their challenges to those lines in their entirety:

- Page 2, Line 3
- Page 3, Line 14
- Page 4, Line 13
- Page 4, Line 25
- Page 5, Line 12
- Page 6, Line 12
- Page 11, Line 2
- Page 12, Line 5
- Page 25, Line 14
- Page 30, Line 14
- Page 31, Line 22

- Page 31, Line 28

As the result of these pretrial stipulations, it was agreed that Candidate had a total of **466** valid signatures (**12** plus **454** originally unchallenged signatures = **466**) and that Candidate was **34** short of **500 (500 − 466 = 34)**. Thus, with Candidate's pretrial concession that **47** signature lines were invalid, and with Objectors' pretrial concession that **12** signatures were valid, **186** of the original **245** signature lines challenged remained in dispute **(245 − 47 − 12 = 186).**

### III. <u>Stipulations During the Hearing</u>

### A. Objections Withdrawn During Hearing

On March 4, 2024, this Court conducted a hearing to address Objectors' challenges to the Nomination Petition. Candidate and Objectors asked the Court to address each of the remaining **186** objections to fully develop the record in light of the condensed election timeframe in the event of an appeal or remand. During the hearing, Objectors withdrew their objections to the following **17** signatures:

- Page 1, Line 3
- Page 3, Line 22
- Page 3, Line 28
- Page 3, Line 29
- Page 3, Line 30
- Page 4, Line 15
- Page 4, Line 16
- Page 6, Line 1
- Page 6, Line 4
- Page 9, Line 11
- Page 9, Line 12
- Page 12, Line 27
- Page 12, Line 30
- Page 16, Line 1
- Page 16, Line 17
- Page 22, Line 3

- Page 22, Line 4

In sum, as the result of Objectors' stipulations at trial, it was agreed that Candidate was left with **483** valid signatures (**12** pretrial stipulations plus **454** originally unchallenged signatures) plus **17** stipulations at trial = **483**) and that Candidate was **17** short of **500** (**500 – 483 = 17**).

### B. Stipulated Invalid During Hearing

During the hearing, Candidate conceded that the following **10** signature lines, based on various challenges, were invalid:
- Page 6, Line 11
- Page 6, Line 15
- Page 6, Line 24
- Page 11, Line 12
- Page 13, Line 23
- Page 16, Line 11
- Page 16, Line 22
- Page 26, Line 2
- Page 30, Line 11
- Page 31, Line 15

At that point, after pretrial stipulations and stipulations made at the hearing, **159** signatures remained in dispute (**186 – 17** stipulated valid at hearing – **10** stipulated invalid at hearing = **159**).

### C. Court's Rulings During the Hearing

During the hearing, the Court ruled that the following **2** signatures, challenged on grounds that the signatories were Not Registered (NR), Not Registered at Address (NRA), or that Line Information was Omitted (LIO), were valid:
- Page 10, Line 5
- Page 30; Line 7

Also, during the hearing, the Court ruled that the following **4** signatures, challenged on grounds that the signatories were Not Registered (NR), Not Registered at Address (NRA), that Line was Information Omitted (LIO) or that the Signature was Printed (PRI), were invalid:

- Page 4, Line 14
- Page 8, Line 8
- Page 11, Line 9
- Page 17, Line 26

The Court reserved ruling on the following **2** signatures that were challenged on grounds that the signatories were Not Registered in Candidate's Party (NRCP) and Not Registered at Address (NRA):

- Page 2, Line 23
- Page 16, Line 24

This meant that, as the result of the Court's rulings at trial, and before the Court heard any argument on challenges based on "in the hand of another" (IHA), Candidate had **485** valid signatures (**12** pretrial stipulations plus **454** originally unchallenged signatures plus **17** stipulations at trial plus **2** valid per Court's rulings during the hearing = **485**) and that Candidate was **15** short of 500 (**500 – 485 = 15**).

### D. In the Hand of Another

In total, Objectors challenged **148** signature lines on the grounds that some or all the information on the signature line was written "in the hand of another" (IHA). Objectors provided expert testimony on this issue. At the hearing, in addition to any withdrawals noted in paragraph III(A) above that were challenged on IHA grounds, the Court also ruled on **36** IHA challenges and found **27** of the challenged

8

signatures to be valid[5] and **9** invalid.[6]  At the hearing, the Court reserved ruling on **21** IHA challenges.[7]  That brought the number of valid signatures to **512**.  However, Candidate withdrew all **22** signatures on Page 22, which included Lines 3 and 4 on Page 22, that were initially deemed valid (resolved) by the Court because Objectors withdrew their IHA objections to them.  With those two signatures deemed **invalid**, the number of valid signatures is **510** (**485** valid signatures plus **27** Court's rulings on IHA challenges minus **2** invalid signatures that were originally deemed valid = **510**).  At this point, **91** signatures remained in dispute (**151 – 27 – 9 – 20 = 91**).

On the record at the end of the hearing, Objectors voluntarily withdrew all remaining IHA challenges that had not yet been reviewed in the presence of the Court via the line-by-line method (**54** challenges) and conceded that Candidate had more than enough presumptively valid signatures to remain on the ballot.  Objectors filed a Post-Hearing Status Report on March 5, 2024, listing all of the lines challenged on the basis that they were IHA that they were withdrawing, which included the **21** signatures the Court had reserved ruling on.  Objectors offered no

---

[5] The Court ruled the following **27** signature lines were valid: Page 2, Line 24; Page 3, Line 12; Page 3, Line 13; Page 3, Line 26; Page 3, Line 27; Page 5, Line 25; Page 5, Line 26; Page 6, Line 2; Page 6, Line 21; Page 6, Line 22; Page 6, Line 29; Page 6, Line 30; Page 8, Line 7; Page 8, Line 19; Page 10, Line 19; Page 10, Line 20; Page 11, Line 17; Page 11, Line 27; Page 12, Line 28; Page 13, Line 10; Page 13, Line 11; Page 16, Line 10; Page 17, Line 27; Page 17, Line 29; Page 17, Line 30; Page 18, Line 9; Page 18, Line 10.

[6] The Court ruled the following **9** signature lines were invalid: Page 2, Line 25; Page 3, Line 24; Page 3, Line 27; Page 6, Line 3; Page 8, Line 20; Page 11, Line 18; Page 11, Line 28; Page 12, Line 29; Page 17, Line 28.

[7] The Court reserved ruling on the following **21** IHA challenges: Page 3, Line 16; Page 3, Line 17; Page 3, Line 18; Page 3, Line 19; Page 3, Line 20; Page 3, Line 21; Page 17, Line 7; Page 17, Line 8; Page 17, Line 9; Page 17, Line 10; Page 18, Line 1; Page 18, Line 2; Page 18, Line 3; Page 18, Line 4; Page 18, Line 5; Page 18, Line 6; Page 18, Line 7; Page 18, Line 11; Page 18, Line 12; Page 18, Line 13; Page 18, Line 14.

evidence on the remaining **39** challenges and withdrew them. Adding the two remaining signatures lines (Page 2, Line 23 and Page 16, Line 24) that the Court reserved ruling on leaves Candidate with **626** valid signatures (510 + 54 + 39 + 21 + 2 = **626**).

## IV. <u>Motion to Amend to Add Global Challenge</u>

Near the end of the hearing on March 4, 2024, Objectors' counsel orally moved to amend the Petition to Set Aside, which amendment, as explained below, would add a new global objection based on the same facts Objectors already had alleged to challenge Page 22. Specifically, Objectors now seek to add a global challenge to the entire Nomination Petition (not just Page 22) on the ground that Candidate had altered the Statement of Circulator (Circulator Statement) on Page 22 by correcting the circulator's county of residence. In their original Petition to Set Aside, they alleged a defective circulator statement. Now they assert a violation of Sections 1813 and 1814 of the Election Code, 25 P.S. §§ 3513, 3514 in an attempt to invalidate the entire Nomination Petition. Objectors contend that this alteration was a violation of Sections 1813 and 1814 of the Election Code, 25 P.S. §§ 3513, 3514, which prohibit, *inter alia*, alterations and defacements of nomination petitions and the submission of petitions known to contain false statements. Objectors argue that Candidate falsely affirmed in her candidate affidavit that she would not knowingly violate any provision of the Election Code, *see* Section 910 of the Election Code, 25 P.S. § 2870(e), which falsehood mandates the setting aside of the entire Nomination Petition.

### A. **Objectors' Original Challenge to Page 22**

In their original Petition to Set Aside, which was filed on February 20, 2024, Objectors challenged **247** signatures, including all **22** signatures on Page 22

10

on the ground that the Circulator Statement was defective because it was altered by Candidate.[8] Specifically, Objectors alleged:

> **Objectors specifically allege that the Circulator Statement on Page 22 is defective, in that <u>it was altered by Candidate Stulginskas</u> after having been completed by the circulator.**

(Petition to Set Aside, ¶ 10 n.2) (emphasis added). Thereafter, in a Status Report filed on March 1, 2024, **three days before the hearing**, Objectors again indicated that they were challenging all signatures on Page 22 of the Nomination Petition because the Circulator Statement impermissibly was altered by Candidate. Objectors alleged:

> **All twenty-two signature lines on Page 22 are challenged on the grounds that the Circulator Statement is defective ("DCS"), in that <u>it was impermissibly altered by</u> another—namely <u>the Candidate, Kami Stulginskas.</u>**

(Status Report, 3/1/24, ¶ 6(a)) (emphasis added).

At the end of the hearing on March 4, 2024, after conceding that Candidate had more than enough signatures to remain on the ballot, Objectors' counsel indicated that he had been provided with information sometime in the prior week or weekend that Candidate admitted she had corrected the circulator's county of residence. Objectors' counsel then called Candidate as a witness and asked her whether she in fact corrected the Circulator Statement on Page 22. Candidate confirmed that she had and withdrew Page 22 from the Nomination Petition, thus

---

[8] The original version of the Circulator Statement apparently identified "Munhall Boro" as the circulator's county of residence. However, on the filed version, "Munhall Boro" is stricken through, and the word "Allegheny" is handwritten next to it. (Petition to Set Aside, Ex. A, p. 2, side 2.)

giving Objectors the remedy they requested. Objectors' counsel then orally moved to amend the Petition to Set Aside to now include a global challenge to the entire Nomination Petition on the ground that Candidate had altered the Circulator Statement on page 22. The Court took Objectors' motion to amend under advisement, ended the hearing, and permitted both Candidate and Objectors to submit memoranda of law in support of their positions by 5:00 p.m. on March 5, 2024.

### B. Principles Governing Amendments to Petitions to Set Aside

The law governing objections to nomination petitions and amendments to those objections is well settled. In reviewing objections to a candidate's nomination petition, the Election Code must be liberally construed "so as not to deny a candidate the opportunity to run for office or deprive the electorate of its right to vote for the candidate of its choice." *In re Nomination Petition of Delle Donne*, 779 A.2d 1, 4 (Pa. Cmwlth. 2001). Furthermore, "the purpose of the Election Code is to protect, not defeat, a citizen's vote." *Dayhoff v. Weaver*, 808 A.2d 1002, 1006 (Pa. Cmwlth. 2002). "Thus, nomination petitions are presumed to be valid, and it is the objector's heavy burden to prove that a candidate's nomination petition is invalid." *In re Nomination Petition of Masino*, 293 A.3d 752, 760 (Pa. Cmwlth. 2023) (citation omitted). "A party alleging defects in a nominat[ion] petition has the burden of proving such defects, and, where the court is not convinced that challenged signatures are other than genuine, the challenge is to be resolved in favor of the candidate." *Id.* (citation omitted).

Section 977 of the Election Code governs the timing for the filing of objections to nomination petitions and provides, in pertinent part, as follows: "All nomination petitions and papers received and filed within the periods limited by this

12

act shall be deemed to be valid, **unless, within seven days after the last day for filing said nomination petition or paper**, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside." 25 P.S. § 2937. Thus, and typically, **additional or supplemental petitions to set aside may not be filed after the seven-day period** established by Section 977 expires. *In re Nomination Petition of Bishop*, 579 A.2d 860, 862 (Pa. 1990).

Our Supreme Court explained the importance of enforcing this seven-day limitation on objection amendments in *In re Nomination Petition of Bryant*, 852 A.2d 1193 (Pa. 2004). There, an objector attempted to advance a new substantive basis for challenging a nomination petition after expiration of the seven-day time period. Specifically, the objector attempted, by way of a pre-hearing memorandum, to challenge for the first time the validity of the candidate's statement of financial interests. *Id.* at 1194. The Supreme Court held such an objection is subject to the statutory deadline and may not be newly raised as a basis for setting aside a petition after the seven-day timeframe had passed. *Id.* at 1196. In making this determination, the Court pointed to the "plain-meaning interpretation of Section 977, in particular, the statute's admonition that a nomination petition that remains unchallenged within the seven-day period 'shall be deemed to be valid,' 25 P.S. § 2937." *Id.* at 1195. It also noted that this legislative scheme created "a relatively tight timeline for review through which objections to nominations must be channeled as a means of fostering orderliness, certainty, and stability in the election process." *Id.* Thus, where an objector "pursue[s] an entirely new objection subsequent to the expiration of the statutorily-prescribed seven-day period[,]" amendment generally will not be permitted. *Id.* at 1196.

13

In certain limited circumstances, Pennsylvania courts have permitted amendments to nomination petitions to add challenges after the expiration of the seven-day limitation period. For example, an objector who has challenged petition signatures on a nomination petition is not precluded, after the seven-day period, from seeking to amend the challenges to those same signatures to include additional or other valid grounds under the Election Code. *Id.*; *see also In re Nomination Petition of Stuski*, 697 A.2d 235, 238 n.7 (Pa. 1997); *Appeal of Beynon*, 88 A.2d 789, 792 (Pa. 1952); *In re Masino*, 293 A.3d at 763; *In re Nomination Paper of Rogers*, 908 A.2d 942 (Pa. Cmwlth. 2006) (Colins, J.) (single-judge op.); *In re Delle Donne*, 779 A.2d at 4.

Our courts also have permitted amendments to petitions to set aside based on newly-discovered facts that come to light after the seven-day period expires. For example, in *In re Delle Donne*, an objector to a nomination petition challenged a single page of a nomination petition on the ground that the circulator included an incorrect county of residence in the circulator statement. 779 A.2d at 6. The circulator testified at the hearing on the objectors' petition to set aside, and, while doing so, acknowledged that she had not, in fact, circulated that page of signatures. *Id.* at 7; *see also id.* at 8 (circulator's testimony indicated that "she was not the circulator and, more important[ly], that she had no personal knowledge of any of the persons who signed their names, their addresses and whether they were registered democrats") (emphasis removed). Based on this newly-discovered information, the objector moved to amend the original petition to set aside to add an objection to the entirety of the page signed by the circulator on the ground that she was not the circulator of the page and had no personal knowledge of its contents. *Id.*

14

at 8. This Court permitted the amendment and, based on the amended objection, struck all signatures from that page. *Id.* at 10.

In sum, Pennsylvania courts have discretion to permit amendments to petitions to set aside after the expiration of the seven-day period, but that discretion is defined and limited by the relationship between the attempted amendment and the original, timely-filed objections. *In re Nomination Petition of Brown*, 992 A.2d 882, 883 (Pa. 2010) (*Roebuck*). Where an objector seeks to amend the grounds for challenging already-objected-to signatures, the amendment generally will be permitted **where the candidate was on notice and is in a position to present a defense.** *In re Masino*. If new facts supporting an objection are discovered after the expiration of the seven-day period, amendment generally will be permitted. *In re Delle* Donne, 779 A.2d 1. However, where the facts supporting an objection were known to an objector prior to the expiration of the seven-day period, amendment generally will not be permitted. *Bryant*. *See also In re Masino*, 293 A.3d at 762 ("[A]mendments that seek to challenge new signature lines or to assert a new non-signature[-]line[-]based substantive challenge, such as a challenge to a circulator's statement or the failure to file a statement of financial interests, are not permitted after the seven-day period expires.").

### C. Analysis

Here, Objectors seek to amend their Petition to Set Aside to add a global challenge to the Nomination Petition based on the same facts they originally alleged to support their request to strike Page 22, namely, Candidate's correction of the Circulator Statement. Objectors nevertheless argue that (1) they did not become aware of the facts supporting such an amendment until after they filed their Petition to Set Aside, *see* Objectors' Br. at 8 ("[T]he factual predicate for the challenge that

15

Objectors seek to add by way of amendment was only brought to light by the Candidate's own admission in the course of these proceedings."); (2) their proposed amendment would merely add a new legal theory to their Petition to Set Aside and would not create new factual issues; and (3) the legal principles underlying the Election Code and general notions of equity militate in favor of permitting amendment in these circumstances. We disagree on all counts and deny Objectors' motion to amend.

First, it is clear from the record that, when Objectors filed the Petition to Set Aside, *they already asserted that Candidate had corrected the circulator's county of residence on Page 22 of the Nomination Petition* and requested that the 22 signatures on Page 22 be stricken. Critically, **Objectors *did not* request at that time that the entire Nomination Petition be set aside on that ground.** Then, after meeting with Candidate to discuss pre-hearing stipulations, Objectors filed a Status Report on March 1, 2024, in which they **once again stated** that they sought to strike Page 22 of the Nomination Petition on the ground that *Candidate* had corrected the circulator's county of residence on the Circulator Statement.

Thus, Objectors' representation that they were not aware of the facts supporting a global objection to the Nomination Petition until Candidate informed Objectors' counsel that she had, in fact, corrected the circulator statement is belied by the record and Objectors' own pleadings.[9] The facts which formed the basis for Objectors' challenge to Page 22 are the very same facts they claim justify setting

---

[9] Objectors note that Candidate represented in her chart filed on February 29, 2024, that she was unaware of who altered the Circulator Statement. Then, at some point over the next three days, Candidate advised Objectors' counsel that she had made the alteration. This does not change the fact that Objectors clearly had sufficient facts necessary to support a global objection to the Nomination Petition when they filed their Petition to Set Aside; otherwise, they would not have asserted their objection to Page 22 in the first place.

16

aside the entire Nomination Petition. This case therefore is controlled by *Bryant* and is distinguishable from *Delle Donne* because there is no newly discovered evidence here. Objectors did not learn of any new facts that they did not already know, or at least allege, when they filed the Petition to Set Aside. They did not, as the objector had in *Delle Donne*, discover during the hearing entirely new facts that warranted the lodging of an entirely new objection to a page of the nomination petition. And, the mere fact that Objectors confirmed during the hearing what they have alleged all along does not mean that they could not have lodged a global objection to the Nomination Petition within the seven-day limitation period.

Second, the proposed objection to the entirety of the Nomination Petition is not, as Objectors suggest, a minor change in the legal challenge to the Circulator Statement. Objectors indicated throughout these proceedings, until near the end of the hearing on March 4, 2024, that they were only challenging **the 22 signatures on Page 22** of the Nomination Petition due to Candidate's correction of the Circulator Statement. However, Objectors sought to change their objection, based on the same factual grounds, to apply to all 699 signatures, **467** of which Objectors already had stipulated on the record to be valid. Objectors' proposed amendment thus would change the entire character of their Petition to Set Aside, the record necessary for the Court to render findings, and the litigation strategy that Candidate, who proceeded *pro se*, might elect. It is one thing for a candidate to proceed *pro se* at a hearing where individual signatures or a single global objection to a single signature page are at issue; it is quite another thing, and one far more grave, to be forced to unexpectedly, and without prior notice, defend against a single objection which, if successful, would require the setting aside of the entire Nomination Petition.

17

Finally, the Court's decision to preclude Objectors' last-minute proposed amendment both furthers the purposes of the Election Code and protects against inequity to Candidate in terms of depriving her of the opportunity to present an appropriate defense. *In re Masino*, 293 A.3d at 760-61. Objectors' original Petition to Set Aside establishes that they intended from the outset of these proceedings to challenge the Circulator Statement for Page 22 on the ground that Candidate corrected the circulator's county of residence. Candidate withdrew Page 22 from the Nomination Petition at the hearing, giving Objectors the remedy they initially requested. The objectionable aspects of Page 22 thus have been adequately addressed in Objectors' favor, as they plead in their Petition to Set Aside. Permitting an eleventh-hour amendment at this juncture, based on facts previously known by Objectors, would effectively place the burden on Candidate to defend against a new global challenge, lodged "after the statutory period ha[s] run, [which] would render nugatory the protections afforded [to Candidate] by Section 977[ ] and defeat the interests sought to be furthered by that Section." *In re Wagner*, 511 A.2d 754, 756 (Pa. 1986) (citation omitted).

For all of these reasons, Objectors' motion to amend is denied. Because it is undisputed that Candidate otherwise has a sufficient number of signatures to be placed on the ballot for the April 23, 2024 General Primary Election, the Court denies Objectors' Petition to Set Aside.

_____
PATRICIA A. McCULLOUGH, Judge

18

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Nomination Petition of : 
Kami Stulginskas for : 
Senator in the Pennsylvania :   No. 89 M.D. 2024
General Assembly from the : 
45th Senatorial District : 
                            : 
Objection of: Stephen : 
Schlauch, Steven Patrick, : 
and Dave Majernik : 

## ORDER

AND NOW, this 9th day of March, 2024, it is hereby ordered that the petition filed by Stephen Schlauch, Steven Patrick, and Dave Majernik (Objectors) to set aside the nomination petition of Kami Stulginskas as candidate for Senator in the Pennsylvania General Assembly from the 45th Senatorial District is hereby **DENIED**. It is further ordered that Objectors' motion to amend their petition to set aside to assert a global challenge is hereby **DENIED**. As such, the Secretary of the Commonwealth is hereby **DIRECTED** to certify Kami Stulginskas as a Republican candidate for Senator for the 45th Senatorial District of Pennsylvania in the April 23, 2024 General Primary Election. The Prothonotary of the Commonwealth Court is directed to send a copy of this Order to the Secretary of the Commonwealth. The parties shall bear their own costs.

 

_____
PATRICIA A. McCULLOUGH, Judge